**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

SHANNAN M. BURRELL,            )
                               )
         Plaintiff,            )
                               )
v.                             )     Case No. CIV-12-475-JHP-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
         Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Shannan M. Burrell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on January 20, 1976 and was 33 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant has previously worked as a manager of a general store and as a security guard. Claimant alleges an inability to work beginning January 19, 2007 due to limitations resulting from on-the-job neck injury.

**Procedural History**

On April 14, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On August 7, 2009, an administrative hearing was held before an Administrative Law Judge ("ALJ").  By decision dated August 28, 2009, the ALJ denied Claimant's request for benefits.  The Appeals Council denied review of the ALJ's decision on January 18, 2011.  Thereafter, on March 27, 2012, the ALJ's decision was reversed by this Court on appeal and remanded for further proceedings.

While the appeal of the decision on the disability claim was pending, Claimant filed an application for supplemental security on March 9, 2011, which the Social Security Administration joined with the disability claim on remand.

On September 7, 2012, a supplemental hearing was conducted by ALJ Lantz McClain.  He issued an unfavorable decision on September 26, 2012.  The decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

For purposes of this Report and Recommendation, the adjudicated period for the disability claim is between January 19, 2007, Claimant's alleged onset date, and March 31, 2009, the last

day of Claimant's insured status.  The adjudicated period for Claimant's SSI claim is between the date of the filing of the claim, March 9, 2011, and September 26, 2012.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly assess Claimant's RFC; and (2) failing to properly evaluate Claimant's credibility.

## RFC Evaluation

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post cervical spine surgery x 2 with radiculopathy to the right upper extremity, and degenerative disc disease of the lumbar spine.  (Tr. 278).  He also found Claimant retained the RFC to perform light work in that she was able to lift or carry up to 20 pounds occasionally and 10 pounds frequently, sit and stand up to 6 hours in an 8 hour workday and sit at least 6 hours in an 8 hour workday, but was further limited in that she should avoid work above the shoulder level.  (Tr. 283). After

5

consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of cashier, a sorting position, office helper, a food order clerk, all of which existed in sufficient numbers in the national and state economies. (Tr. 295-96).

Claimant contends that the ALJ erred in arriving at her RFC determination. Claimant first alleges the ALJ failed to properly evaluate her physical functioning on the required "function-by-function" and "regular and continuing" basis. On December 30, 2006, Claimant was injured after being struck by a falling object on her head and neck. (Tr. 180). Claimant was treated by Dr. Harleen Grewal for neck pain, sleep difficulties, and tinnitus in 2007. (Tr. 192-93, 222-23, 228-30). At that time, Claimant was found to have normal muscle strength and tone, normal reflexes, symmetric and physiologic. Her neck was described as supple with tense paraspinal muscles. (Tr. 193).

On July 30, 2008, Claimant was examined by consultative examiner Dr. Ronald Schatzman. Dr. Schatzman noted Claimant was remarkable for depression, numbness, joint stiffness and swelling, muscle pain, tinnitus, weight gain, poor sleep, and asthma. (Tr. 198). Claimant's neck was again described as supple. (Tr. 199). Claimant's grip strength was 5/5 bilaterally strong and firm. She

was able to perform both gross and fine tactile manipulation. Finger to thumb opposition was adequate. Knees showed no effusion or edema and were stable in all range of motion exercises. Great toe strength was equal bilaterally. Heel/toe walking was normal. Tandem gait was within normal limits. Leg lengths including calf and thigh circumferences were equal bilaterally. (Tr. 200).

Claimant's cervical spine was found to be non-tender with limited range of motion. Dr. Schatzman noted a scar from a cervical fusion after Claimant's injury. The thoracic spine was non-tender with full range of motion. The lumbar-sacral spine was non-tender with full range of motion. Straight leg raising reflex was negative bilaterally in both sitting and supine positions. Claimant's gait was safe and stable with appropriate speed. She did not ambulate with the aid of assistive devices. She had no identifiable muscle atrophy. Dr. Schatzman diagnosed Claimant with neck pain secondary to disc disease status post surgery with continued neck pain, tinnitus by history, and tobacco abuse by history. (Tr. 200).

On August 22, 2008, Dr. J. Marks-Snelling completed a Physical Residual Functional Capacity Assessment form on Claimant. Dr. Marks-Snelling found Claimant could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand and/or walk for 6

hours out of an 8 hour workday, sit for 6 hours out of an 8 hour workday, engage in unlimited pushing and pulling. He noted Claimant showed no tenderness during the evaluation, had adequate peripheral pulses, grip strength 5/5 bilaterally strong and firm, was able to perform both gross and fine tactile manipulation. Claimant's cervical spine was non-tender with limited range of motion, thoracic spine was non-tender with full range of motion, lumbar-sacral spine was non-tender with full range of motion. Straight leg raising was negative bilaterally. DTRs were normal in all extremities. Claimant's gait was safe and stable with appropriate speed. She did not need assistive devices to ambulate and no identifiable muscle atrophy noted. Dr. Marks-Snelling felt Claimant's fusion and impairment supported the RFC. He did not feel that pain further limits. (Tr. 205-06).

In August and October of 2008, Claimant returned to Dr. Grewal reporting tense muscles in her neck. (Tr. 645, 648). Dr. Grewal also saw Claimant in March of 2009, noting her neck pain was "ok" on medication, her back hurt because of her weight, and she was tired. (Tr. 638). Her neck was found to be supple. She had normal muscle strength and tone, her reflexes were normal, symmetric and physiologic but delayed. (Tr. 639). In a June of 2009 examination, Dr. Grewal found normal muscle strength and tone,

reflexes normal, symmetric and physiologic. (Tr. 636).

In September of 2009, Claimant complained of localized muscle spasms, bilateral, tender to palpation in paravertebral muscle mass in spine, bilateral. Dr. Grewal also found Claimant had decreased range of motion from her neck fusion. Claimant had normal muscle strength and tone, reflexes symmetric and physiologic, Babinski negative, Romberg present, sensation normal, gross and fine motor was within normal limits. (Tr. 630).

By February of 2011, Dr. Grewal found Claimant's neck to be supple. (Tr. 618). On June 9, 2011, Dr. David Malone examined Claimant, noting she complained of increasing right upper extremity pain and weakness. She had some increased neck pain and tightness, but arm numbness and pain was her bigger problem. She was found to be in mild distress. She did not need assistive devices to walk. Claimant was able to stand and ambulate with no assistance and no significant difficulties or limitations. She had movement in her extremities with no new gross motor or sensory changes although she die not have subjective pain in the upper extremity. Dr. Malone opined that Claimant might be slightly diminished from normal, but more so the pain and numbness were her complaints. (Tr. 837).

On August 9, 2011, Dr. Kenneth Wainner, a consultative physician, completed a Physical Residual Functional Capacity

9

Assessment form on Claimant.  Dr. Wainner found Claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk for about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling.  Dr. Wainner found Claimant could stand and ambulate without difficulties or limitations.  She had movement in all extremities with no gross motor or sensory changes.  Claimant was found to be able to function and participate in activities of daily living.  Her fusion was excellent.  (Tr. 975-76).

Claimant identifies numerous disassociated findings in various reports and then criticizes the ALJ for failing to discuss them in his decision.  An ALJ is required to consider all relevant evidence in the record.  Soc. Sec. R. 06-03p.  He is not, however, required to discuss every piece of evidence in the record.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  The ALJ discussed the evidence relevant to his RFC assessment.

"RFC is what an individual can still do despite his or her limitations," and it constitutes "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . . may cause . . . limitations or restrictions that may affect his or her capacity to do work-related . . . activities." Soc. Sec. R. 96-8p.  To

determine a claimant's RFC, the ALJ must therefore assess the claimant's ability to perform the "physical demands of work activity, such as sitting, standing, walking, [and] lifting." 20 C.F.R. §§404.1545(b), 416.945(b). Further, the ALJ must assess "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis," and this requires the ALJ to "describe the maximum amount of each work-related activity the individual can perform." Soc. Sec. R. 96-8p. In addition, "[t]he RFC assessment must be based on all of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, effects of symptoms, and evidence from attempts to work. Id. Finally, the ALJ "must . . . make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Id. The ALJ fulfilled his duty to assess Claimant's functional limitations based upon the medical record. Claimant has not identified a medical source which has significantly reduced the RFC determined by the ALJ. As a result, this Court finds no error in the ALJ's RFC assessment.

## Medication Side Effects

Claimant also contends the ALJ failed to consider the

medically recognized side effects of her medication. The ALJ noted Claimant's testimony that her medications cause extreme sleepiness and memory loss as side effects. (Tr. 279). He concluded, however, that no such reports of side effects were made to Claimant's medical providers despite inquiry into that specific area. In cases where Claimant experienced side effects, the ALJ found she stopped taking the medication. He, therefore, found this condition was not medically determinable. Id.

Claimant draws this Court's attention to the medical record of Dr. Grewal from June of 2009 wherein Claimant complained of excessive daytime sleepiness. (Tr. 635). Nothing in this record, however, attributes this condition to a side effect of medication. Claimant asks this Court to draw a medical conclusion that Claimant suffered side effects from her medication when the medical record does not support such a finding. Neither this Court nor the ALJ are equipped to make this medical finding or draw this conclusion without support. This Court attributes no error to the ALJ's findings on this issue.

### Credibility Evaluation

Claimant takes issue with the ALJ's challenge to Claimant's credibility. While this Court does not find the wording of the boilerplate credibility finding to be particularly helpful, the ALJ

in some detail tied his findings on credibility and the inconsistencies in Claimant's testimony on functional limitation to the medical record.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ made such findings as to meet his obligation under these credibility standards.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of February, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE